Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| NORFE GROUP CORP.<br><br>**RECURRIDA**<br><br>v.<br><br>MULTINATIONAL INSURANCE COMPANY<br><br>**PETICIONARIA** | KLCE202300427 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil núm.: SJ2019CV09905 (0603)<br><br>Sobre: INCUMPLIMIENTO DE CONTRATO; DAÑOS Y PERJUICIOS |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Rodríguez Flores.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2023.

Comparece Multinational Insurance Company y Otros (Peticionaria o Multinational), mediante recurso de *certiorari* y nos solicita que revoquemos la *Resolución* que emitió el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro de instancia), el 15 de febrero de 2023[1]. En el referido dictamen, el foro de instancia denegó la *Solicitud de Sentencia Sumaria* que presentó la parte peticionaria.

Por los fundamentos que exponemos a continuación, expedimos el auto solicitado y revocamos la *Resolución* recurrida.

**I.**

El 19 de septiembre de 2019, Norfe Group Corp., (Recurrido o Norfe) presentó una Demanda contra Multinational, EIG Group, Inc. y otros por incumplimiento de contrato, más daños y perjuicios por presuntas infracciones a los Arts. 27.164 y 27.165 del Código de

---

[1] La *Resolución* fue notificada y archivada en autos el mismo día, 15 de febrero de 2023.

Seguros de Puerto Rico, *infra*. El recurrido reclamó que es el dueño del Apartamento PH-A del Condominio Olympic Tower, situado en la Calle Rodríguez Serra, Núm. 1 en San Juan, Puerto Rico. Alegó que, por causa del paso del huracán María por Puerto Rico, el 20 de septiembre de 2017, la propiedad en cuestión sufrió daños por la cantidad de $2,840,333.00, que Multinational se rehusó a compensar, a pesar de haber expedido una o varias pólizas para cubrir dicho riesgo[2].

Después de considerar una *Moción de Desestimación* presentada por EIG Group, el 26 de noviembre de 2019, el foro de instancia emitió una *Sentencia Parcial* al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, en la que desestimó la acción incoada contra EIG Group, por insuficiencia en las alegaciones sometidas en contra de la referida empresa[3].

Posteriormente, Multinational presentó una *Moción de Desestimación por Falta de Jurisdicción y por Falta de Legitimación Activa de la Parte Demandante*[4]. Expuso que Norfe carecía de legitimación activa para presentar una demanda en su contra, pues no existe ninguna póliza que la aseguradora haya emitido a su favor. Aseguró que en la póliza número 88-CP-000314960-1, a la que Norfe hace referencia, éste no aparece como beneficiario o titular, por lo que la reclamación sometida en su contra es improcedente.

En la alternativa, Multinational argumentó que, aún si existiera una póliza a su favor, la demanda sería igualmente improcedente y contraria a derecho, debido a que Norfe no cumplió con el requisito jurisdiccional que establece la Ley Núm. 247-2018, que enmendó la Ley Núm. 77 de 19 de junio de 1957, conocida como el Código de Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.* Según

---

[2] Véase el Anejo 1 en el apéndice del recurso de *certiorari*.
[3] Véanse la Entrada Núm. 9 y 15 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[4] Véase el Anejo 2 en el apéndice del recurso de *certiorari*.

expuso, esta legislación requiere agotar los remedios administrativos que ofrece la Oficina del Comisionado de Seguros para los casos relacionados a los huracanes Irma y María, previo a incoar cualquier acción judicial.

Norfe se opuso a la solicitud de Multinational[5]. Expuso que el inmueble por cuyos daños se reclama era una de las 20 unidades aseguradas por la referida póliza. Manifestó que después del paso del huracán María, Multinational le facturó la prima que le correspondía a su apartamento y Norfe pagó, por lo que entiende que procedía la celebración de una vista evidenciaria.

Después de evaluar la posición de ambas partes, el 6 de febrero de 2020, el TPI emitió una *Sentencia Parcial* en la que decretó Ha Lugar, parcialmente, la solicitud de desestimación sobre el reclamo de daños y perjuicios que presentó Norfe contra la aseguradora, al amparo de los Arts. 27.164 y 27.165 del Código de Seguros[6]. Determinó que Norfe debía completar el trámite requerido en el organismo administrativo, antes de acudir al foro judicial. Por consiguiente, desestimó, sin perjuicio, su reclamo. No obstante, en cuanto a la controversia sobre la alegada falta de legitimación activa de Norfe, el TPI decidió que tenía jurisdicción sobre la materia para atender la causa de acción contractual. En consecuencia, ordenó la continuación de los procedimientos.

Insatisfecha con lo resuelto, Multinational presentó una *Moción de Reconsideración de Sentencia Parcial*, mediante la cual expuso que el TPI carecía de jurisdicción sobre todas las causas de acción que presentó Norfe en su contra, por lo que procedía la desestimación total del pleito de marras[7]. Explicó que independiente de quién sea el titular de la póliza de seguros, el incumplimiento con

[5] Véase la Entrada Núm. 30 en SUMAC.
[6] Véase el Anejo 4 en el apéndice del recurso de *certiorari*.
[7] Véase el Anejo 5 en el apéndice del recurso de *certiorari*.

el requisito que exige el Código de Seguros, priva al tribunal de jurisdicción para intervenir en el asunto presentado.

El 18 de febrero de 2020, el TPI le ordenó a Norfe que presentara su posición respecto a la solicitud de reconsideración en o antes del 10 de marzo de 2020. Sin embargo, antes de que venciera el término concedido, el 4 de marzo de 2020, el foro recurrido emitió *Sentencia* en reconsideración. En su dictamen, el TPI decidió acoger la *Moción de Desestimación* presentada por Multinational como una solicitud de sentencia sumaria y desestimó todas las reclamaciones que presentó Norfe en su *Demanda*[8].

En desacuerdo con el dictamen, Norfe acudió ante este tribunal intermedio mediante un recurso de apelación, en el que señaló que el TPI erró al resolver la *Moción de Reconsideración,* antes de que transcurriera el término concedido por el propio tribunal, para que expresara su posición sobre la solicitud[9]. Argumentó que, con su acción, el foro de instancia lo privó de su derecho a un debido proceso de ley. Además, adujo que, antes de dictar la sentencia desestimatoria, el foro de instancia debió concluir con el descubrimiento de prueba y celebrar una vista evidenciaria, a los fines de determinar si verdaderamente procedía la desestimación solicitada. Oportunamente, Multinational se opuso a la apelación presentada.

Evaluados los argumentos de las partes, el 4 de febrero de 2021, este Tribunal dictó *Sentencia*, en la que revocó el dictamen apelado y devolvió los autos al tribunal primario, para que se le brindara a Norfe la oportunidad de comparecer y ser oído[10]. Esto en consideración a que el foro primario había desestimado la reclamación, sin percatarse que había concedido un término a Norfe

---

[8] *Íd.*, Anejo 10.
[9] *Íd.*, Anejo 11.
[10] *Íd.*, Anejo 13, KLAN202000287.

para oponerse a la desestimación; que dicho término no había transcurrido y que este no había presentado su escrito en oposición. Es decir, la revocación del foro primario por un panel hermano obedeció a un asunto de índole procesal no sustantiva. No obstante, en dicha ocasión, la compañera Jueza Lebrón Nieves advirtió mediante un Voto Disidente que, y citamos: "...bien resolvió el foro apelado, al no ser NORFRE Group, una parte contratante en el contrato de seguro en controversia, dicha entidad carece de legitimación activa para reclamarle individualmente a Multinational. Es incuestionable que, el foro apelado tenía la obligación de auscultar su jurisdicción. Máxime, cuando la ausencia de esta fue traída ante su atención por la parte apelada. Consecuentemente, es la opinión de esta Juez que en el caso de marras procede la desestimación con perjuicio de la demanda en su totalidad por falta de jurisdicción al no tener la parte apelante legitimación activa para incoar el pleito en cuestión."

Así las cosas, el 20 de agosto de 2021, Norfe compareció ante el TPI mediante su *Oposición a Moción de Desestimación,* en la que reiteró sus argumentos sobre la procedencia de su demanda[11]. Además, argumentó que no existe una definición particular de lo que es un asegurado en el Código de Seguros, ni su Reglamento. Entiende que un asegurado puede ser cualquier persona natural o jurídica. Por otro lado, arguyó que, supuestamente, la Junta de Directores del Condominio incumplió con las obligaciones que le impone la Ley de Condominios ante un evento catastrófico. Adujo que la Junta no preparó un plan de distribución de los fondos para la reconstrucción de cada apartamento. Como consecuencia, afirmó que Norfe se vio obligada a reclamar directamente a la aseguradora. Finalmente, esbozó que, debido a lo anterior, el TPI debía traer al

---

[11] *Íd.*, Anejo 14.

pleito como parte indispensable al Consejo de Titulares para dilucidar si llevaron a cabo los procesos correspondientes, de acuerdo con la Ley de Condominios.

Luego de considerar los argumentos de las partes, el 7 de diciembre de 2021, el TPI emitió una *Resolución* que declaró No Ha Lugar la *Moción de Desestimación*[12]. Después de aclarar que no se encontraba en posición de dirimir sobre las alegaciones en cuanto a la póliza en pugna, por no tener la totalidad del documento, determinó que, a base de la doctrina de legitimación activa, Norfe cumple con todos los criterios para promover la reclamación judicial de marras. No obstante, decretó que Multinational "podría ser responsable de indemnizar a Norfe por los daños sufridos en el apartamento [...]". En cuanto a los reclamos relacionados a los Arts. 27.164 y 27.165 del Código de Seguros, *supra*, decidió abstenerse de tramitar su reclamo, hasta que Norfe acreditara que agotó los remedios administrativos que dispone la ley.

Tras algunas incidencias procesales, el 19 de enero de 2023, Multinational presentó una *Solicitud de Sentencia Sumaria*, en la que señaló que existen varios hechos sobre los cuales no existe controversia que establecen *prima facie* que Norfe no es acreedor de los daños que reclama bajo la Póliza en controversia[13].

En su escrito, reiteró que Norfe carecía de legitimación activa para presentar reclamo alguno en su contra, toda vez que la referida póliza fue expedida únicamente a favor Condominio Olympic Tower y no en beneficio de Norfe. También, expuso que Norfe perdió su derecho a reclamar y beneficiarse de los reemplazos, reparaciones y reembolsos que provee la Póliza, debido a que el recurrido vendió el apartamento que poseía en el Condominio Olympic Tower el 22 de marzo de 2018, previo a la presentación de la *Demanda* de

---

[12] *Íd.*, Anejo 17.
[13] *Íd.*, Anejo 19.

epígrafe[14]. Por consiguiente, reafirmó que Norfe no tiene legitimación activa para presentar ningún procedimiento legal en cuanto al inmueble en controversia.

Sobre los daños reclamados y cotizados por CDR Group, LLC en $2,840,333.06, Multinational argumentó que éstos no están cubiertos por la Póliza del Condominio, por incluir un endoso *Bare Wall* que no cubre los perjuicios recibidos en los bienes privativos del apartamento[15]. También, alegó que la indemnización que reclamó Norfe sobre los gastos por remodelación incurridos, no se encuentran cobijados por la Póliza, por ser una con valoración de pérdida al *Replacement Cost* o valoración de reemplazo. Por otro lado, sostuvo que en caso de que los daños reclamados estuvieran cubiertos por la Póliza, Norfe no tendría ningún derecho a compensación, ya que Norfe no efectuó el pago correspondiente a su porción de la prima de la Póliza del Condominio, hasta después de haber ocurrido el huracán María.

Finalmente, expuso que Multinational emitió los pagos correspondientes a la reclamación de pérdidas que sometió el Condominio, a tenor con los términos dispuestos en la Póliza y las disposiciones del Código de Seguros[16]. Ante este hecho, afirmó que no existe reclamación alguna que amerite la concesión de un remedio. En mérito de lo anterior, aseguró que en el caso de marras no existen los elementos necesarios para que la Póliza responda por los daños reclamados, por lo que procede la desestimación sumaria de la causa incoada.

Norfe se opuso a la *Solicitud de Sentencia Sumaria* que presentó Multinational[17]. Además de reiterar sus argumentos, Norfe expuso que no existe controversia sobre el alegado asunto de

---

[14] *Íd.*, Anejo 15, pág. 372.
[15] *Íd.*, Anejo 19, pág. 511.
[16] *Íd.*, pág. 727.
[17] *Íd.*, Anejo 20.

legitimación activa, pues éste fue debidamente adjudicado por el TPI y constituye la ley del caso. A su vez, aseveró que existe controversia sobre los daños cubiertos bajo la Póliza, ya que Multinational falló al no determinar cuáles son los daños reclamados que están excluidos bajo el endoso de *Bare Wall* y cuáles no, por lo que la moción de sentencia sumaria sería prematura. Adujo, que su derecho a reclamar las pérdidas ya fue adjudicado por el foro de instancia y constituye la ley del caso.

Evaluadas las posiciones de las partes y la totalidad del expediente, el 15 de febrero de 2023, el TPI emitió una *Resolución*, en la que determinó que no era necesario celebrar una vista en su fondo para resolver la controversia, en vista de que el foro *a quo* ya había dispuesto el reclamo de falta de legitimación activa de Norfe, cuya decisión no fue recurrida[18]. Por consiguiente, declaró No Ha Lugar la *Solicitud de Sentencia Sumaria* y adoptó e incorporó por referencia a su dictamen los fundamentos de la *Moción en Oposición a "Moción Solicitando Sentencia Sumaria* que presentó Norfe.

En desacuerdo con lo resuelto, Multinational presentó una *Moción de Reconsideración*, a la que se opuso Norfe[19]. Examinados los argumentos de las partes, el TPI decidió mantener lo resuelto en su dictamen y declaró No Ha Lugar la solicitud[20].

Aún inconforme, Multinational acudió ante nosotros mediante el recurso de epígrafe en el que señaló los siguientes ocho errores:

> ERRÓ EL TPI AL DECLARAR *NO HA LUGAR* LA *SOLICITUD DE SENTENCIA SUMARIA* PROMOVIDA POR EL PETICIONARIO, TODA VEZ QUE, CONFORME A LOS TÉRMINOS, CONDICIONES, ENDOSOS Y EXCLUSIONES DE LA PÓLIZA EXPEDIDA POR EL PETICIONARIO A FAVOR DEL CONDOMINIO OLYMPIC TOWER, NO EXISTE ESCENARIO ALGUNO EN EL CUAL EL RECURRIDO TUVIERA DERECHO A INDEMNIZACIÓN POR LOS DAÑOS QUE RECLAMA AL AMPARO DE LA REFERIDA PÓLIZA.
>
> ERRÓ EL TPI AL DECLARAR *NO HA LUGAR* LA *SOLICITUD DE SENTENCIA SUMARIA* PROMOVIDA POR EL PETICIONARIO, TODA

[18] *Íd.*, Anejo 21.
[19] Íd., Anejos 22 y 23.
[20] *Íd.*, Anejo 24.

VEZ QUE EL RECURRIDO RECLAMA DAÑOS ALEGADAMENTE SUFRIDOS EN EL INTERIOR DE SU APARTAMENTO Y, SEGÚN LOS TÉRMINOS Y CONDICIONES DE LA CUBIERTA *BARE WALL* QUE OFRECE LA PÓLIZA, LOS DAÑOS A LA PROPIEDAD PRIVADA E INDIVIDUAL DE CADA UNO DE LOS TITULARES DEL CONDOMINIO QUEDAN EXCLUIDOS DE CUBIERTA POR LA REFERIDA PÓLIZA.

ERRÓ EL TPI AL DECLARAR *NO HA LUGAR* LA *SOLICITUD DE SENTENCIA SUMARIA* PROMOVIDA POR EL PETICIONARIO, TODA VEZ QUE EL RECURRIDO RECLAMA POR UNOS ALEGADOS GASTOS DE REPARACIÓN DE SU APARTAMENTO, AUNQUE ADMITIÓ BAJO JURAMENTO NO HABER INCURRIDO EN GASTO ALGUNO DE REPARACIÓN PARA EL INMUEBLE EN CUESTIÓN.

ERRÓ EL TPI AL DECLARAR *NO HA LUGAR* LA *SOLICITUD DE SENTENCIA SUMARIA* PROMOVIDA POR EL PETICIONARIO, TODA VEZ QUE, SEGÚN SE DESPRENDE CLARAMENTE DE LOS HECHOS INCONTROVERTIDOS SUSTENTADOS POR EXTENSA PRUEBA DOCUMENTAL, EL PETICIONARIO YA PAGÓ Y CERRÓ LA RECLAMACIÓN POR LOS DAÑOS DEL HURACÁN MARÍA, PAGO QUE INCLUYÓ LA INDEMNIZACIÓN POR AQUELLOS DAÑOS CUBIERTOS DEL INMUEBLE EN CUESTIÓN.

EL TPI INCURRIÓ EN ERROR CRASO DE DERECHO AL DETERMINAR QUE EL RECLAMO DE FALTA DE LEGITIMACIÓN ACTIVA DEL RECURRIDO YA HABÍA SIDO ADJUDICADO MEDIANTE LA *RESOLUCIÓN* DE 7 DE DICIEMBRE DE 2021, TODA VEZ QUE EL ESTÁNDAR ADJUDICATIVO DE UNA SOLICITUD DE DESESTIMACIÓN AL AMPARO DE LA REGLA 10.2 DE PROCEDIMIENTO CIVIL DIFIERE SUSTANCIALMENTE DEL DE UNA SOLICITUD DE SENTENCIA SUMARIA AL AMPARO DE LA REGLA 36.2 DE PROCEDIMIENTO CIVIL.

EL TPI INCURRIÓ EN ERROR CRASO DE DERECHO AL DETERMINAR QUE EL RECLAMO DE FALTA DE LEGITIMACIÓN ACTIVA DEL RECURRIDO YA HABÍA SIDO ADJUDICADO MEDIANTE LA *RESOLUCIÓN* DE 7 DE DICIEMBRE DE 2021, TODA VEZ QUE DE DICHA *RESOLUCIÓN* SE DESPRENDE CLARAMENTE QUE EL TPI SE VIO IMPOSIBILITADO DE ADJUDICAR DICHO ARGUMENTO PORQUE LA PÓLIZA QUE PARA ENTONCES OBRABA EN AUTOS NO CONTENÍA TODOS SUS ENDOSOS Y LAS MISMA NO HABÍA SIDO AUTENTICADA.

EL TPI INCURRIÓ EN ERROR CRASO DE DERECHO AL ADOPTAR E INCORPORAR POR REFERENCIA LOS ARGUMENTOS VAGOS, ESTEREOTIPADOS Y NO FUNDAMENTADOS EN PRUEBA ALGUNA ESBOZADOS POR EL RECURRIDO EN SU *OPOSICIÓN A SOLICITUD DE SENTENCIA SUMARIA*, TODA VEZ QUE LA REFERIDA OPOSICIÓN NO CUMPLIÓ CON LOS REQUISITOS DE FORMA CODIFICADOS EN LA REGLA 36 DE PROCEDIMIENTO CIVIL.

EL TPI INCURRIÓ EN ERROR CRASO DE DERECHO AL ADOPTAR E INCORPORAR POR REFERENCIA LOS ARGUMENTOS VAGOS, ESTEREOTIPADOS Y NO FUNDAMENTADOS EN PRUEBA ALGUNA ESBOZADOS POR EL RECURRIDO EN SU *OPOSICIÓN A SOLICITUD DE SENTENCIA SUMARIA*, TODA VEZ QUE LAS DETERMINACIONES DE HECHOS NÚMERO 3, 5-9, 9-20, 29-30, 32-34, 37, 41, 43-44, 50-52, 54-55, 57 Y 59 QUE EL RECURRIDO "NIEGA" ESTÁN SUSTENTADAS EN EXTENSA PRUEBA DOCUMENTAL Y NO FUERON CONTROVERTIDAS POR ESTE.

**II.**

**A.**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. 32 LPRA sec. 3491; *Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); *IG Builders v. BBVAPR,* 185 DPR 307, 337 (2012); *García v. Padró,* 165 DPR 324, 334 (2005). La discreción judicial se ha definido como la autoridad para elegir entre diversas opciones sin enajenarnos del derecho. Los tribunales deben ejercer su discreción de forma razonable al momento de pasar juicio sobre una controversia para así poder llegar a una condición justiciera. *IG Builders v. BBVAPR,* supra, pág. 338; *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008); *García v. Padró,* supra, págs. 334–335.

Por otro lado, la autoridad del Tribunal de Apelaciones para expedir un recurso de certiorari está limitada por la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, que dispone lo siguiente:

> el recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales. 32 LPRA Ap. V.

Superado los criterios esbozados en la regla antes reseñada, venimos obligados a considerar una segunda revisión al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. La Regla 40 dispone:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

**B.**

Por otro lado, la justiciabilidad requiere la existencia de un caso o una controversia real para que los tribunales puedan ejercer válidamente el poder judicial. *Ramos Rivera v. García García*, 203 DPR 379, 393-394 (2019); *Noriega v. Hernández Colón*, 135 DPR 406, 420 (1994). Los tribunales únicamente podemos evaluar los méritos de los casos que sean justiciables. *Hernández Montañez v. Pares Alicea*, 208 DPR 727, 738 (2022); *Bathia Gauthier v. Gobernador*, 199 DPR 59, 68 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 931 (2011).

No se considera una controversia justiciable cuando: "(1) se procura resolver una cuestión política; (2) una de las partes carece

de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro". *Ramos Rivera v. García García*, supra; *Bathia Gauthier v. Gobernador*, supra, pág. 69; *Noriega v. Hernández Colón*, supra, pág. 421.

Por legitimación activa se entiende la capacidad de una parte para realizar con eficacia actos procesales como parte litigante y comparecer como demandante. Esta requiere que la parte tenga una capacidad individualizada y concreta 'en la reclamación' procesal. Ahora bien, no todo el que tiene 'capacidad para demandar' tiene 'acción legitimada' en un pleito específico. En cada pleito, además de 'capacidad para demandar', la parte interesada deberá demostrar que tiene un 'interés legítimo[']. *Co. Ópticos de P.R. v. Vani Visual Center*, 124 DPR 559, 563 (1989); Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1986, Vol. I, pág. 13. Es un mecanismo de autolimitación y de prudencia judicial que persigue asegurar que el que presenta una acción en el tribunal tiene tal interés en el mismo que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia. *Co. Ópticos de P.R. v. Vani Visual Center*, supra, pág. 564; *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 413 (1982).

Ante la falta de una ley que expresamente confiera legitimación activa, una parte demandante la posee si cumple con los requisitos siguientes, que: (1) ha sufrido un daño claro y palpable; (2) el referido daño es real, inmediato y preciso, y no abstracto o hipotético; *(3) existe conexión entre el daño sufrido y la causa de acción ejercitada,* y (4) la causa de acción surge bajo el palio de la Constitución o de una ley. *Ramos Rivera v. García García,* supra, pág. 395; *Col. Peritos Elec. v. A. E. E.,* 150 DPR 327, 331

(2000); *Hernández Torres v. Hernández Colón*, 131 DPR 593, 599 (1996).

## C.

En cuanto a la doctrina de la "ley del caso", como norma general esta proscribe que los planteamientos que han sido objeto de adjudicación por el foro primario o el Tribunal Apelativo puedan reexaminarse. Los derechos y las responsabilidades que emanan de las determinaciones judiciales poseen características de finalidad y firmeza conforme a la doctrina de la "ley del caso." *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 9 (2016); *Mgmt. Adm. Servs, Corp. v. E.L.A.*, 152 DPR 599, 606-607 (2000). La certeza del derecho, el trámite pronto y ordenado del litigio promueven el uso de la doctrina. Ahora bien, solo procede la invocación de la doctrina, cuando exista una decisión final de la controversia en sus méritos. *Cacho Pérez v. Hatton Gotay*, supra.

No obstante, nuestro más Alto Foro local ha sido enfático en que no se trata de una regla inviolable y que la doctrina cede ante una determinación errónea. Se ha enfatizado que "cuando [l]a ley del caso es errónea y puede causar una gran injusticia, puede emplearse una norma de derecho diferente". *Mgmt. Adm. Servs, Corp. v. E.L.A.*, supra, pág. 607; *Félix v. Las Haciendas*, 165 DPR 832, 844 (2005); *Cacho Pérez v. Hatton Gotay*, supra, pág. 10; *Secretario del Trabajo v. Tribunal Superior*, 95 DPR 136, 140 (1967). La doctrina de la "ley del caso" ha siempre de orientarse hacia el "servicio de la justicia, no la injusticia; no es férrea ni de aplicación absoluta. Por el contrario, es descartable si conduce a resultados "manifiestamente injustos". *Noriega v. Gobernador*, 130 DPR 919, 931 (1992); *Estado Libre Asociado de P.R. v. The Ocean Park Development Corp.*, 79 DPR 158, 173 (1956). Los tribunales nunca debemos olvidar que en primera y última instancia nuestro norte siempre ha de ser la justicia.

**D.**

La Ley de Condominios establece los mecanismos para tramitar los conflictos inevitables que dimanan del modus vivendi de un condominio. También pormenoriza la estructura organizacional del gobierno interno, cuyo organismo rector deliberativo es el Consejo de Titulares. Este cuerpo, a su vez, está regido por la Ley de Propiedad Horizontal, la escritura matriz y el reglamento. *Consejo de Titulares v. Gómez Estremera*, 184 DPR 407, 417 (2012)[21].

La Asamblea legislativa delegó ciertos deberes y facultades a la Junta de Directores como el órgano ejecutivo de la comunidad de titulares o el Consejo de Titulares. Por esa razón, el legislador le delegó: (1) atender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y, en especial, lo relativo a las cosas y elementos de uso común y los servicios generales; (2) atender la conservación del inmueble y disponer las reparaciones ordinarias; (3) adoptar las medidas necesarias dando inmediata cuenta al Consejo respecto a las reparaciones extraordinarias; (4) cumplir y hacer cumplir las disposiciones de este capítulo, del reglamento y de los acuerdos del Consejo de Titulares, entre otras. 31 LPRA sec. 1293b-4; *Consejo de Titulares v. Gómez Estremera*, supra, págs. 417-418.

Por su parte, el Art. 42 de la Ley de Condominios de 2003, 31 LPRA sec. 1293f, regía las impugnaciones de los acuerdos del Consejo de Titulares, de las determinaciones, omisiones o actuaciones del director o de la Junta de Directores y del titular que somete el inmueble al régimen, entre otros. Este artículo establecía el foro adecuado y con jurisdicción para presentar las distintas

---

[21] La opinión citada fue resuelta durante la vigencia de la Ley de Condominios, Ley Núm. 103-2003, derogada por la Ley Núm. 129-2020. Los hechos ante nuestra consideración ocurrieron bajo la vigencia de la Ley 103-2003.

acciones de impugnación al amparo del régimen de propiedad horizontal. Según dicho artículo, las impugnaciones presentadas por los titulares de apartamientos destinados a viviendas tenían que presentarse ante el Departamento de Asuntos del Consumidor. *Consejo de Titulares v. Gómez Estremera*, supra, págs. 418-419.

El legislador hizo una distinción entre condominios dedicados a uso comercial no residencial y aquellos en los que por lo menos existe un apartamento dedicado a vivienda. Esta distinción es importante, porque de ella depende la jurisdicción del foro donde se presentarán las impugnaciones de los titulares. Las acciones relacionadas a edificios comerciales serían presentadas en el tribunal. Los titulares de condominios dedicados a vivienda ventilarían sus impugnaciones en el DACo. *Ayala Hernández v. Consejo de Titulares*, 190 DPR 547, 563, 565 (2014).

En cuanto a la controversia que tenemos ante nuestra consideración, los titulares, mediante acuerdo de quienes representen la mayoría, podrán asegurar contra riesgos el inmueble para cubrir las áreas comunes generales, procomunales y limitadas de éste, así como otros riesgos para beneficio común de los titulares, sin perjuicio del derecho que asiste a cada uno para asegurar por su cuenta y beneficio propio su apartamiento. El titular que tenga un seguro particular para su apartamiento, o que haya saldado su hipoteca, no queda exonerado de pagar la parte proporcional de cualquier seguro comunal adoptado por el Consejo de Titulares. Art. 43 de la Ley de Condominios de 2003, 31 LPRA 1293 (g)[22].

---

[22] Artículo 43. — Seguro del edificio contra riesgos; derechos individuales de titulares.

Los titulares, mediante acuerdo de quienes representen la mayoría, podrán asegurar contra riesgos el inmueble para cubrir las áreas comunes generales, procomunales y limitadas de éste, así como otros riesgos para beneficio común de los titulares, sin perjuicio del derecho que asiste a cada uno para asegurar por su cuenta y beneficio propio su apartamiento. El titular que tenga un seguro particular para su apartamiento, o que haya saldado su hipoteca, no queda exonerado de pagar la parte proporcional de cualquier seguro comunal adoptado por el Consejo de Titulares.

El Art. 44 de la derogada Ley Núm. 103, 31 LPRA sec. 1293(h), regulaba la aplicación del seguro en los casos de siniestros. El legislador confirió a la Junta de Directores la facultad de preparar un plan para distribuir los fondos para la reconstrucción con las cantidades específicas que habrían de destinarse a cada apartamento conforme a las tasaciones realizadas y a las restantes áreas comunes del inmueble. No obstante, sería el Consejo de Titulares quien decidiría finalmente, por voto mayoritario, todo lo relacionado a la indemnización. La Ley aprobada en el año 2020 también confiere al Consejo de Titulares la facultad de decidir finalmente, mediante mayoría de votos, todo lo relacionado a la indemnización. Art. 63, 31 LPRA sec. 1923(h).

**III.**

Como parte de la discusión de los errores primero y segundo, el peticionario sostiene su posición en cuanto a que Norfe no tiene legitimación activa para reclamar individualmente a Multinational, por los daños que sufrió su propiedad tras el azote de los huracanes Irma y María. Fundamenta su postura en que la Póliza 88-CP-000314960-1 fue expedida a favor del Condominio Olympic Tower y que la Asociación de Condómines del Condominio Olympic Tower figura como único Asegurado Nombrado o *Named Insured,* no así Norfe. Por tratarse de un asunto medular que incide en la jurisdicción del Tribunal, procedemos a atenderlo como cuestión de umbral.

---

Todo titular podrá solicitar de la Junta de Directores la inspección de los documentos relacionados con los seguros comunales. La Junta de Directores podrá sustituir el agente o corredor de seguros, siempre y cuando, las cubiertas y condiciones del nuevo seguro sean las mismas, o de mayor alcance y beneficio, y al mismo, o menor costo de la que estuviera vigente al momento del cambio, previa aprobación del Consejo de Titulares.

Será responsabilidad de la Junta solicitar al corredor de seguros un mínimo de tres (3) cotizaciones para cada renovación anual y mantener evidencia de las mismas por un periodo mínimo de tres (3) años, así como también mantener la evidencia del rechazo a cotizar de cualquier aseguradora, si alguna que así lo haya expresado. Dicha evidencia deberá estar disponible para la revisión de cualquier titular que así lo solicite. 31 LPRA sec. 1293g.

Después de un minucioso examen de los términos de la póliza en pugna, sus condiciones, endosos y exclusiones, somos de la opinión que lo alegado por Multinational procede en derecho. Un contrato de seguros, al igual que todo otro contrato, constituye la ley entre las partes. *Quiñones López v. Manzano Pozas*, 141 DPR 139, 154 (1996). Resulta claro que la Póliza número 88-CP-000314960-1 fue emitida a favor del Condominio Olympic Tower y la Asociación de Condómines que lo representa. Así surge de la declaración de renovación del seguro, con fecha de vigencia desde el 22 de febrero de 2017 hasta el 22 de febrero de 2018[23]. Ciertamente, la Póliza, requerida por la Ley de Condominios, cubre las áreas comunes generales, procomunales y limitadas del inmueble, pero de ninguna manera protege contra riesgos sobre el contenido de cada apartamento. No obstante, ello no exonera a los titulares de pagar la parte proporcional que le corresponde del seguro comunal que sea adoptado por el Consejo de Titulares. Art. 43 de la Ley de Condominios, *supra.* Esto no significa que la póliza expedida cubra la propiedad privada de cada apartamento, como alegó Norfe. Más bien, el pago de la póliza es una obligación contraída por los titulares al adquirir un inmueble bajo el Régimen de Propiedad Horizontal.

En el caso de marras, Norfe demandó a Multinational para que ésta lo indemnizara por los daños sufridos en los bienes privativos que contenía su Apartamento PH-A, en el Condominio Olympic Tower. Sin embargo, como mencionamos, la referida póliza no cubre los perjuicios reclamados, toda vez que ésta fue expedida únicamente a favor de la Asociación de Condómines del Condominio Olympic Tower, para proteger la estructura del Condominio y las áreas comunales, entre otros. Específicamente, el endoso *Bare Wall,* incluido en la póliza, cubre lo siguiente:

---

[23] Véase la página 452 en el apéndice del recurso de *certiorari.*

> Bare walls coverage meaning the building but no limited to the bare perimeter walls, floors, and ceilings of individual units on its most basic form. It does not cover improvements to the units such as fixtures, appliances, interior partitions, wall covering, windows, exterior or interior doors, cabinetry neither included electricity wiring or equipment, plumbing over the structural wall covering, windows, exterior and interiors partitions floor roof, or any kind of buildup roof, any kind of built up roof, communication wiring, a/c system but no limited to compressors, communications lines[24].

Como vemos, lo único que estaba protegido por la póliza en los apartamentos eran los elementos de fachada y las áreas que estaban bajo la responsabilidad de la Junta de Condómines.

No albergamos duda de que Norfe no fue parte contratante en el contrato de seguro y que sus reclamos, en todo caso, debieron ser dirigidos a la Asociación de Condómines, si éste entendía que el organismo no procedió conforme a lo que establece la Ley de Condominios, como expuso en sus escritos ante el TPI. Ante estos hechos, es claro que Norfe no tiene legitimación activa para reclamar a Multinational por los daños ocasionados al contenido privativo en su apartamento. *Ramos Rivera v. García García*, supra; *Col. Peritos Elec. v. A. E. E.*, supra; *Hernández Torres v. Hernández Colón*, supra. La póliza, el contrato entre las partes, identifica al "named insured" como Condominio Olympic Tower. El asegurado es la persona tanto natural como jurídica, por lo general propietaria de la cosa asegurable y contratante directa del seguro, quien le solicita al asegurador mediante solicitud oral o por escrito, un seguro para la protección de su persona, su propiedad, o sus obligaciones económicas por actos u omisiones negligentes hacia terceros o por cualesquiera otros acontecimientos previstos de carácter inciertos futuros y fortuitos.[25]

No obstante, es meritorio señalar que en la *Resolución* recurrida el TPI determinó que el reclamo de falta de legitimación

---

[24] Véase el Anejo 19, página 511, en el apéndice del recurso de *certiorari*.
[25] Cruz, Rolando, *Derecho de Seguros*, San Juan, JTS, 1999, pág. 85.

activa de Norfe ya había sido adjudicado mediante el dictamen emitido el 7 de diciembre de 2021[26], en el que decretó que Norfe tenía legitimación activa. Asimismo, declaró que esta decisión no fue objeto de ningún recurso apelativo, por lo que advino final y firme. Sin embargo, en mérito de lo anteriormente discutido, concluimos que la determinación del TPI fue incorrecta. Nos explicamos.

La doctrina de la ley del caso no constituye un mandato inflexible, sino que recoge el principio de que las controversias decididas por un tribunal tengan finalidad y sean respetadas. *Mgmt. Adm. Servs, Corp. v. E.L.A.*, supra. Empero, la doctrina no es absoluta y, excepcionalmente, la determinación final de un tribunal puede ser variada o descartarse si se establece que fue una decisión errónea y puede causar una grave injusticia. *Mgmt. Adm. Servs, Corp. v. E.L.A.*, supra; *Rivera Robles v. Insurance Co. of Puerto Rico*, 103 DPR 91 (1974); *Secretario del Trabajo v. Tribunal Superior*, supra. Después de todo, la ley del caso sirve para dirigir la discreción del tribunal, no limita su poder. *Cacho Pérez v. Hatton Gotay*, supra.

Al examinar la totalidad del expediente, reiteramos que Norfe no figura como asegurado en la Póliza 88-CP-000314960-1. No obstante, para abonar a la falta de legitimación de Norfe, debemos señalar que la prueba sometida demostró que Norfe no era dueño del apartamento objeto de su reclamo, al momento de presentar la *Demanda* contra Multinational. La propiedad ya había sido vendida a los esposos Nicholas Owen Gunden y Andrea Marcus Gunden, que adquirieron su dominio mediante compraventa a Norfe el 22 de marzo de 2018, según consta en escritura pública.[27] Es decir, al

---

[26] *Íd.*, Anejo 17.

[27] *Íd.*, Anejo 15, página 372. Debemos mencionar que el Consejo de Titulares del Condominio Olympic Tower hizo un reclamo a Multinational, bajo la Póliza número 88-CP-000314960-1, por los daños ocasionados al inmueble, tras el azote de los huracanes Irma y María. La aseguradora emitió su oferta de pago y el Condominio, reunido en asamblea extraordinaria, aceptó la indemnización ofrecida por Multinational. Uno de los titulares que participó en la asamblea y aprobó la oferta de Multinational fue el nuevo dueño del apartamento PH-A, el señor Owen Gunden. Véase, Anejo 15 en el apéndice del recurso de *certiorari*, pág. 727.

momento de la presentación de la Demanda de epígrafe, ya Norfre no era dueña del apartamento cuyos daños reclama. Tan es así que, su dueño, señor Owen, compareció a la Asamblea Extraordinaria de 2 de febrero de 2021 y consintió a la aprobación de la distribución del producto del seguro, según presentado por la Junta de Directores y aprobado por los titulares.[28] Ciertamente, el caso de epígrafe debía ser desestimado por falta de legitimación activa. Se trata de un asunto que incide directamente en la jurisdicción del tribunal para atender y resolver en los méritos la controversia. Claramente, el tribunal *a quo* falló al denegar la *Solicitud de Sentencia Sumaria* que presentó Multinational y no desestimar la totalidad del pleito por falta de legitimación activa, de manera que corrigiera una decisión claramente errónea.

En consideración a lo anterior, concluimos que los dos primeros errores señalados por Multinational en su recurso fueron cometidos, por lo que procede dejar sin efecto la *Resolución* recurrida. Ante esta determinación, se hace innecesario la discusión de los demás errores señalados.

**IV.**

Por los fundamentos que anteceden, expedimos el auto de *certiorari,* revocamos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan y desestimamos la *Demanda* presentada por Norfe, por falta de legitimación activa.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[28] Véase Minuta Asamblea Extraordinaria, págs. 727 a 730 del apéndice del recurso.